## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUBEN D. MORALES,<br><br>    Plaintiff,<br><br>v.<br><br>THE STATE OF NEW JERSEY, THE NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, THE NEW JERSEY DEPARTMENT OF CORRECTIONS SPECIAL INVESTIGATION DIVISION, MARCUS HICKS, VICTORIA KUHN, PATRICK NOGAN, GEORGE ROBINSON, JR., MATTHEW SCHLUSSELFELD, DUANE GRADE (in their personal and official capacities), SHAWN ZAMBRANO, JOHN AND JANE DOES (1-50) (in their personal and professional capacities), and XYZ ENTITIES AND CORPS. (1-50),<br><br>    Defendants. | Case No. 2:21-cv-11548-CCC-AME<br><br>*Civil Action* |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

WEINER LAW GROUP LLP
629 Parsippany Road
P.O. Box 438
Parsippany, New Jersey 07054-0438
Phone:   (973) 403-1100
Fax: (973) 403-0010
Attorneys for Plaintiff,
Ruben D. Morales

On the Brief:
David J. Heintjes, Esq. (#024212003)

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS .............................................. i

TABLE OF AUTHORITIES ......................................... iii

STATEMENT OF CASE .............................................. 1

STATEMENT OF FACTS ............................................. 2

STANDARD OF REVIEW ............................................. 5

LEGAL ARGUMENT ................................................. 7

POINT I ....................................................... 7

   PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED BECAUSE IT
WAS APPROPRIATELY PLED........................................ 7

     A.   The New Jersey Civil Rights Act - Count 4, and The
Constitutional Torts - Count 5........................ 9

     B.   Conscientious Employee Protection Act - Count Six...... 11

     C.   Discharge Due To Workers' Compensation - Count 9....... 13

POINT II ...................................................... 14

   DEFENDANTS' MOTION IS PREMATURE AS THE COMPLAINT REQUIRES
FACT DISCOVERY................................................ 14

POINT III ..................................................... 15

   PLAINTIFF TIMELY FILED A NOTICE OF CLAIM AND HIS STATE LAW
CLAIMS THEREFORE SURVIVE THIS MOTION AS A MATTER OF LAW...... 15

     A.   Plaintiff Gave Timely Notice of Claim................. 16

     B.   Substantial Compliance............................... 18

POINT IV ...................................................... 22

   COUNTS TEN THROUGH THIRTEEN AND SIXTEEN THROUGH EIGHTEEN
SHOULD NOT BE DISMISSED AGAINST THE PUBLIC ENTITY
DEFENDANTS AS IMMUNITY DOES NOT EXIST FOR WILLFUL OR
INTENTIONAL CONDUCT.......................................... 22

POINT V .................................................... 25

   PUNITIVE DAMAGES ARE ALLOWED AGAINST PUBLIC ENTITIES IN
   EMPLOYMENT CASES ....................................... 25

POINT VI ................................................... 26

   PAIN AND SUFFERING CLAIMS ARE RECOVERABLE FOR CLAIMS IN
   PLAINTIFF'S COMPLAINT .................................. 26

CONCLUSION ................................................. 27

## TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

<u>Abbamount v. Piscataway Bd. of Educ.</u>,
  138 <u>N.J.</u> 405 (1994)........................................25

<u>Anske v. Borough of Palisades Park</u>,
  139 <u>N.J. Super.</u> 342 (App. Div. 1976)...................18, 19

<u>Ashcroft v. Iqbal</u>,
  556 <u>U.S.</u> 662, 129 <u>S.Ct.</u> 1937 (2009)......................6, 8

<u>Beauchamp v. Amedio</u>,
  164 <u>N.J.</u> 111 (2000)........................................16

<u>Bell Atl. Corp. v. Twombly</u>,
  550 <u>U.S.</u> 544 (2007)........................................6, 7

<u>Bernstein v. Bd. Of Trs., TPAF</u>,
  151 <u>N.J. Super</u>. 71 (App. Div. 1977)..........................19

<u>Bistrian v. Levi</u>,
  696 <u>F.3d</u> 352 (3d. Cir. 2012)................................8

<u>Bogosian v. Gulf Oil Corp.</u>,
  561 <u>F.2d</u> 434 (3d Cir. 1977).................................6

<u>Bombace v. City of Newark</u>,
  241 <u>N.J. Super.</u> 1 (App. Div. 1990).........................24

<u>Cavouti v. New Jersey Transit Corp.</u>,
  161 <u>N.J.</u> 107 (1999)........................................25

<u>Chester County Intermediate Unit v. Pa. Blue Shield</u>,
  896 <u>F.2d</u> 808 (3d Cir. 1990).................................6

<u>County of Hudson v. Dep't of Corr.</u>,
  208 <u>N.J.</u> 1 (2011).........................................20

<u>Frugis v. Bracigliano</u>,
  177 <u>N.J.</u> 250 (2003).......................................24

<u>Galik v. Clara Mass Medical Center</u>,
  167 <u>N.J.</u> 341 (2001)....................................18, 19

Henderson v. Herman,
  373 N.J. Super. 625 (App. Div. 2004) .....................20, 21

Lameiro v. W. N.Y. Bd. Of Educ.,
  136 N.J. Super. 585 (Law Div. 1975) .........................20

Lebron v. Sanchez,
  407 N.J. Super. 204 (App. Div. 2009) ....................16, 20

Lehman v. Toys 'R' Us, Inc.,
  132 N.J. 587 (1993) .........................................25

Lockley v. Dept. of Corrections,
  177 N.J. 413 (2003) .........................................25

Lowe v. Zarghami,
  158 N.J. 606 (1999) .........................................16

Marley v. Palmyra Bor.,
  193 N.J. Super. 271 (Law Div. 1983) .........................24

Ray v. Kertes,
  285 F.3d 287 (3d Cir. 2002) ..............................7, 15

Remick v. Manfredy,
  238 F.3d 248 (3d. Cir. 2001) .................................7

Watson v Abington Twp.,
  478 F.3d 144 (2007) ..........................................6

Will v. Michigan Department of Police,
  491 U.S. 58 (1989) ..........................................10

Zamel v. Port of N.Y. Auth.,
  56 N.J. 1 (1970) ............................................19

**Statutes**

42 U.S.C. §1983 ...............................................10

N.J.S.A. 2A:15-5.9 et seq. ...................................25

N.J.S.A. 59:2-10 .............................................24

N.J.S.A. 59:8-4 .............................................21

N.J.S.A. 59:8-4a ............................................16

N.J.S.A. 59:8-4c ............................................17

N.J.S.A. 59:8-4d ............................................... 17

N.J.S.A. 59:8-4e ............................................... 17

N.J.S.A. 59:8-4f ............................................... 17

N.J.S.A. 59:8-8 ................................................ 16

N.J.S.A. 59:9-2(c) ............................................. 23

N.J.S.A. 59:9-2(d) ............................................. 26

**Rules**

F.R.C.P. 12(b)(6) ................................... 2, 5, 6, 15

F.R.C.P. 12(d) ................................................. 15

F.R.C.P. 56 (c) ................................................ 15

F.R.C.P. 8(a)(2) ............................................... 7

**Other Authorities**

H.C. Equities, LP v. County of Union, New Jersey, and Union County Improvement Authority, 2021 WL 3027207 (2021) ........ 19

https://www.nj.gov/treasury/riskmgt/pdf/ClaimShortForm.pdf ... 18

Margolis and Novack, Claims Against Public Entities, pg. 73 (2020) ......................................................... 23

Robert E. Bartkus, New Jersey Federal Civil Procedure, Edition I, 2015 ........................................................ 9

## STATEMENT OF CASE

On April 22, 2019, Plaintiff, a twenty (20) year veteran Senior Correctional Police Officer employed by the New Jersey Department of Corrections at Northern State Prison in Newark, was viciously attacked by an inmate that was able to free himself from his cell due to the cell doors not locking properly. Plaintiff had previously complained about the faulty conditions of the cell doors but Defendants took no action to correct the exceedingly dangerous working conditions. Because of the attack, Plaintiff suffered and continues to suffer severe and permanent injuries. Specifically, the incident resulted in Officer Morales needing spinal fusion surgery and the damage to his emotional and mental health was so severe it required a brief commitment to a mental health facility to deal with the stress and anxiety caused by the gravitas of the situation before the Court. Officer Morales continues to suffer physically, emotionally, and mentally in a dramatic way from the facts that underlie this litigation.

Immediately after the assault, Plaintiff was taken to the hospital via ambulance where he remained for an entire day. Upon his release from the hospital, Plaintiff returned to the jail and completed a State of New Jersey "Report of Accidental Injury" form. (See Heintjes Cert. Exhibit A) On that form, Plaintiff provided his name, address, social security number, date, location, time, description of the assault, description of his injuries as known

1

at the time, and a list of known witnesses.  The form indicates that his superiors were to further investigate and forward the form to the State of New Jersey Department of the Treasury, Division of Risk Management, PO Box 620 Trenton, NJ 08625.  The form is nearly identical to a Tort Claim Notice and was filed within seventy-two (72) hours of the attack.

After Plaintiff's injuries and complaints of the dangerous working conditions, Defendants began a course of action of discrimination and retaliation against Plaintiff.  Defendants instituted spurious criminal and administrative investigations and charges against Plaintiff which have caused Plaintiff to suffer and continue to suffer from the severe and permanent injuries referenced herein.

Defendants now move to dismiss this action pursuant to F.R.C.P. 12(b)(6).

### STATEMENT OF FACTS

Plaintiff began his employment with the New Jersey Department of Corrections on or about September 26, 1999.  In those twenty (20) plus years of meritorious service, Plaintiff received two commendations for exceptional performance and only one disciplinary action.  (See Paragraph 1 of the Complaint annexed as Exhibit B to the Heintjes Certification)  For the entirety of his career, Plaintiff was employed as a Correctional Police Officer at Northern State Prison Located in Newark, New Jersey. (See Paragraph

16 of the Complaint annexed as Exhibit B to the Heintjes Certification.)

Northern State Prison is a maximum-security prison that houses approximately eighteen hundred (1,800) prisoners. Inside the prison there is a unit known as the Administrative Segregation Unit ("Ad Seg") where inmates that are deemed too violent to be in general population are housed. (See Paragraph 17 of the Complaint annexed as Exhibit B to the Heintjes Certification.) The locking mechanism on the cell doors in Ad Seg do not function properly and inmates can free themselves from their cells at will. (See Paragraph 19 of the Complaint annexed as Exhibit B to the Heintjes Certification.)

Plaintiff complained about the dangerous conditions inside the prison. (See Paragraph 19 of the Complaint annexed as Exhibit B to the Heintjes Certification.)   Despite the complaints from Plaintiff and others, the Department of Corrections took no corrective action to repair the cell doors and ensure a safe environment for its employees or the inmates within its care. (See Paragraph 20 of the Complaint annexed as Exhibit B to the Heintjes Certification.)

On April 22, 2019, while working his normal duties in Ad Seg, Plaintiff was viciously assaulted by Defendant Zambrano, who, because of the faulty cell doors, was able to free himself from his cell to perpetrate the brutal attack.   (See Paragraph 32 of

Preuss Certification annexed hereto as Exhibit B.)   Zambrano was housed in Ad Seg due to his repeated violent conduct while incarcerated at the prison as a result of a conviction of first degree carjacking – inflicting bodily injury/use of force. (See Paragraph 29 of Preuss Certification annexed hereto as Exhibit B.)

As a result of the attack and beating, Plaintiff suffered permanent, painful bodily injuries which necessitated his obtaining medical treatment, caused him great pain and suffering, severe mental anguish manifesting in physical injuries, incapacitated him from pursuing his usual employment and other activities, and have left him with loss of income and permanent disabilities that will, in the future, similarly incapacitate him, cause him great pain and suffering and require medical treatment. (See Paragraph 34 of Preuss Certification annexed hereto as Exhibit B.)

After Plaintiff was rescued by fellow officers responding to the scene of the assault, he was taken to the hospital for his injuries via ambulance.  After his discharge from the hospital, two days after the assault, Plaintiff returned to Northern State Prison and completed a State of New Jersey "Report of Accidental Injury" form. (See Heintjes Cert. annexed hereto as Exhibit A) On that form Plaintiff provided his name, address, social security number, date, location, time, description of the assault and how it occurred, description of his injuries as known at the time, and

4

a list of known witnesses. (See Heintjes Cert. annexed hereto as Exhibit A) The form indicates that his superiors were to further investigate and forward the form to the State of New Jersey Department of the Treasury, Division of Risk Management, PO Box 620 Trenton, New Jersey 08625 – the same exact address and P.O. Box that the State of New Jersey directs notices of claims to be filed.

While Officer Morales was out of work convalescing from his injuries, Defendants instituted spurious criminal and administrative charges against him. The aforesaid conduct of Defendants has prevented Plaintiff's ability to return to work and has caused him to suffer severe emotional distress.  All of the aforesaid conduct by defendants also caused him to suffer severe, painful bodily injuries which necessitated his obtaining medical treatment, caused him great pain and suffering, severe mental anguish manifesting in physical injuries, and have left him with permanent reputational damage, loss of income, permanent disabilities that will, in the future, similarly incapacitate him, cause him great pain and suffering and require medical treatment and other damages. (See Paragraph 45 of the Complaint annexed as Exhibit B to the Heintjes Certification)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move for dismissal of a complaint based on failure to state a

claim upon which relief can be granted.  A complaint should only be dismissed pursuant to FRCP 12(b)(6) if the alleged facts, taken as true, fail to state a claim.  When deciding a motion to dismiss pursuant to FRCP 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.  *See* Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).  It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977) The question before the Court is not whether the Plaintiff will ultimately prevail.  Watson v Abington Twp., 478 F.3d 144, 150 (2007).  Instead, the Court simply asks whether the plaintiff has articulated enough facts to state a claim to relief that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*citing* Twombly, *supra,* 550 U.S. at 556) Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  Iqbal, *supra,* 129 S.Ct. at 1950.

Thus, a motion to dismiss should not be granted when plaintiff's factual allegations are enough to raise a right to relief above the speculative level on the assumption, however doubtful, that all the allegations in plaintiff's complaint are true. Twombly, *supra,* 550 U.S. at 556. All that is required are "enough facts to state a claim to relief that is plausible on its face." Id. at 569.

As argued further herein, the Defendants cannot articulate a basis for relief in the current application as Plaintiff's Complaint is appropriately plead and articulated various claims for relief that are plausible.

As such, Defendants' motion must be denied.

## LEGAL ARGUMENT

### POINT I

### PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED BECAUSE IT WAS APPROPRIATELY PLED.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). The purpose of this statement is to provide the defendant with fair notice of the basis of the plaintiff's claim in order for defendant to respond to the complaint. *See* Twombly, *supra,* 550 U.S. at 565. It is the function of discovery to fill in the details. *See* Remick v. Manfredy, 238 F.3d 248, 263-64 (3d. Cir. 2001). Facts disproving an affirmative defense need not be plead. *See* Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

7

"The touchstone of the pleading standard is plausibility."
Bistrian v. Levi, 696 F.3d 352, 365 (3d. Cir. 2012).  To survive
a motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to state a claim to relief that is
plausible on its face.  A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged.  The plausibility standard is not akin to a
probability requirement, but it asks for more than sheer
possibility that a defendant acted unlawfully.  Ashcroft v. Iqbal,
556 U.S. 662 (2009).  Further, the Third Circuit in Bistrian,
articulated a three-step analysis to be applied by the district
court when evaluating the sufficiency of a complaint.  Bistrian,
supra, 696 F.3d at 365 "First the [the court] outlines the elements
a plaintiff must plead to state a claim for relief."  Id.  "Next
[the court] peel away those allegations that are no more than
conclusions and thus not entitled to the assumption of truth."
Id.  "Finally, we look for well-pled factual allegations, assume
their veracity, and then 'determine whether they plausibly give
rise to an entitlement of relief."  Id. (citing Iqbal, supra, 556
U.S. at 679) (emphasis added).  This last step is "a content
specific task that requires the reviewing court to draw on its
judicial experience and common sense."  Id.  "The issue is not
whether the plaintiff ultimately will prevail, but whether the

plaintiff should be allowed to submit evidence to support its claims." Bartkus, New Jersey Federal Civil Procedure, pg. 214.

Plaintiff's Complaint satisfies the plausibility requirement and is not subject to pre-discovery dismissal. The Complaint as drafted contains sufficient facts not only to give defendants fair notice of the Plaintiff's claims and the grounds or bases on which they rest, but also state claims which are plausible and grounded in documentable facts.

Defendants seek dismissal of Counts four (4), five (5), six (6) and nine (9), arguing that they were insufficiently pled. Controlling authority dictates their application to be denied.

**A.   The New Jersey Civil Rights Act - Count 4, and The Constitutional Torts - Count 5.**

Count Four of the Complaint is brought pursuant to the New Jersey Civil Rights Act ("NJCRA") against Defendants, Hicks, Kuhn, Nogan, Robinson, Schlusselfeld, and Grade ("the Individual State defendants") in their Personal and Official Capacities. Defendants seek to dismiss Count Four of the Complaint as to the individual defendants in their Official Capacities only. Defendants contend that the State Entity defendants and the Individual State defendants are not "persons" under the NJCRA.

Count Five of the Complaint was brought pursuant to the United States Constitution, specifically, retaliation in violation of the United States Constitution's Petition Clause and its New Jersey

Constitution counterpart, against the State of New Jersey, the New Jersey Department of Corrections, Northern State Prison, and the New Jersey Department of Corrections Special Investigation Division ("the State Entity defendants") and the Individual State defendants. Defendants seek to dismiss Count Five of the Complaint against the State Entity Defendants and the State Individual defendants in their Official Capacities only.

The State argues that pursuant to <u>Will v. Michigan Department of Police</u>, 491 <u>U.S.</u> 58 (1989), the State Entity and Individual defendants are not subject to liability under 42 <u>U.S.C.</u> §1983 and that they are not persons under that act. However, the Defendants ignore that Plaintiff pleads that the State Defendants have a policy and/or custom to retaliate against employees who report unlawful, improper and/or prohibited conduct, policies, acts and/or omissions engaged by or on behalf of the State and/or its employees, agents, representatives, and/or servants. It is further pled in the Complaint that the State failed to properly train and/or supervise its employees, servants, representatives and/or agents to prevent such retaliation and was deliberately indifferent to Plaintiff's rights. This conduct is actionable against both the state entities as well as the individually named defendants.

Defendants seek the Dismissal of Count Four (NJCRA) and Count Five (42 <u>U.S.C.</u> §1983) against the Individual State defendants

10

under the theory that Plaintiff alleges their liability is based only upon the theory of Respondeat Superior. This is false and not supported by the Complaint. The Complaint alleges that the individual defendants are liable through the targeted course of conduct against the Plaintiff. Defendants unilateral declaration and pigeonholing of Plaintiff's theories of liability is incorrect on its face and impermissible for purposes of the instant motion. This is a misrepresentation of Plaintiff's complaint. Plaintiff clearly alleges that the Individual Defendants were personally involved in the retaliation, deprivation of his rights, and the other tortious acts of which he was a victim. Defendants, again, argue for a heightened pleading standard or otherwise allege a lack of evidence as opposed to a lack of sufficient pleading. Again, Defendants' arguments are, at best, premature at this stage of the litigation but will likely fail when presented in a timely fashion.

**B.    Conscientious Employee Protection Act – Count Six.**

Count Six of the Complaint was brought pursuant to the New Jersey Conscientious Employee Protection Act ("CEPA") against all State Individual and Entity Defendants. Defendants seek to dismiss Count Six in its entirety alleging that it was insufficiently plead.

The Conscientious Employee Protection Act ("CEPA") is a broad New Jersey whistleblower law. Essentially, it protects employees

from retaliation such as being fired, demoted, passed up for a promotion, or harassed because they objected to something that they reasonably believed violated the law.

More specifically, CEPA prohibits employers from retaliating against an employee because the employee engaged in a wide range of what are referred to as "protected activities." This includes objecting to, or refusing to participate in, an activity the employee reasonably believes (1) is in violation of a law or a legal regulation; (2) is fraudulent or criminal; or (3) is incompatible with a legal requirement relating to public health, safety, welfare or the protection of the environment.

The universe of circumstances that provide a basis for a CEPA claim are clear. The cell doors in an area that was segregated due to its especially dangerous residents were broken. The Plaintiff complained about the doors being broken on nearly a daily basis. As a result of these unsafe doors, the plaintiff was attacked and permanently and seriously injured. The Plaintiff was then retaliated against due to his complaints and subsequent injuries concerning the unsafe cell doors by the institution of baseless administrative and criminal charges.

To refute Plaintiff's claim under CEPA, Defendants resort to the assertion of affirmative defenses and allege that plaintiff cannot prove his CEPA claim. Both arguments are improper at this juncture. A textbook claim for CEPA was plead. Plaintiff

successfully and adequately alleges the factual elements of CEPA and the Defendants' plausible liability for same.   Plaintiff alleges he engaged in protected whistleblowing activity, i.e., he made numerous complaints about dangerous conditions inside a state prison that were both unlawful, and, against a clear mandate of public policy; adverse employment actions were taken against him, and; there was a causal connection between the whistleblowing activity and the adverse employment action.

The Plaintiff has met the "plausibility standard" required in his pleading.   As further explained herein, Defendants' assertion and reliance upon possible defenses to Plaintiff's claims are irrelevant at this stage of the litigation.   Defendants' attempt to heighten the pleading standard must fail as a matter of law, and Defendants' motion must therefore be denied.

## C.   Discharge Due To Workers' Compensation - Count 9.

Count Nine of the Complaint was brought pursuant to the New Jersey Workers' Compensation Act's prohibition against retaliation for claiming workers' compensation benefits.   The elements of this claim are simple:   the Plaintiff was discharged as a result of the filing of a Worker's Compensation Claim.   The Plaintiff alleges that his esteemed career was destroyed immediately after filing a Worker's Compensation Claim.   It is the Plaintiff's burden to establish this allegation throughout the discovery process.   A

conclusory denial by defendants is not sufficient to establish that the claim is insufficiently plead.

Without discussion of any sort, let alone cited authority, Defendants seek to have this Count dismissed in its entirety alleging that it was insufficiently plead for the same reasons they seek to dismiss Count Six. For the same reasons, Defendants' arguments fail at this stage of the litigation.

Plaintiff has pled that he made a claim for workers' compensation benefits and that he was discharged or otherwise discriminated against by Defendants because of his claim for workers' compensation benefits. Accordingly, the Plaintiff has factually asserted all of the required elements to satisfy the pleading requirements for a claim of Discharge Due to Workers' Compensation. Defendants' assertions of defenses to the claim are of no moment in the instant motion.

### POINT II

**DEFENDANTS' MOTION IS PREMATURE AS THE COMPLAINT REQUIRES FACT DISCOVERY.**

Defendants' application to dismiss the Complaint without allowing the benefit of discovery is not supported by controlling authority. The argument that the Plaintiff *may* not be able to prove certain counts in the Complaint is not sufficient to succeed at the pre-answer stage. In fact, the assertion that certain claims cannot be proven is the core dispute in every case in our

adversarial system.   If the potential that certain claims were not able to be proven was the basis for pre-answer dismissal, no litigations would ever go forward.

The central theme of Defendants' arguments are that there is a lack of evidence to support the allegations.   One would not or should not expect public records to confirm tortious conduct.   It would be unrealistic to expect an email or memorandum to exist outlining the plan to discriminate or subject the Plaintiff to tortious conduct.   Indeed, Defendants even rely on papers outside the pleadings (*See* Cert. of Peter Ramos annexed to Cert. of Preuss as Exhibit C) which, pursuant to F.R.C.P. 12(d), requires this Court to examine the Motion under the summary judgment standards of F.R.C.P. 56 (c).   They also rely on asserting affirmative defenses that are not ripe for consideration prior to discovery. Nonetheless, facts disproving an affirmative defense need not be alleged in a complaint nor are they a permissible part of the 12(b)(6) motion record.   *See* Kertes, *supra,* 285 F.3d at 295.

The Defendants' arguments will ultimately fail, but are not even subject to consideration at this juncture.

### POINT III

**PLAINTIFF TIMELY FILED A NOTICE OF CLAIM AND HIS STATE LAW CLAIMS THEREFORE SURVIVE THIS MOTION AS A MATTER OF LAW.**

Defendants' claim that Plaintiff failed to file a Notice of Claim is only accurate in the most hyper technical of ways, ways

in which our jurisprudence concerning Tort Claims Notices expressly disfavors. Plaintiff filed a written notice containing all the information necessitated by the Act. Defendants' refusal or failure to acknowledge Plaintiff's notice of injury was of their own doing and cannot be used as a basis to shield them from liability. Counts Seven, Eight, Ten through Thirteen, and Sixteen through Eighteen survive Defendants' application as the case law concerning substantial compliance is well settled.

**A.  Plaintiff Gave Timely Notice of Claim.**

"The [Tort Claims] Act's notice requirement is not intended as 'a trap for the unwary'" Lowe v. Zarghami, 158 N.J. 606, 629 (1999) (internal citations omitted) Substantial compliance with the notice provision of N.J.S.A. 59:8-8 (the TCA or the Act) is all that is required. Lebron v. Sanchez, 407 N.J. Super. 204, 215 (App. Div. 2009). "In fact, the Court has observed the "'notice of claim' referred to in N.J.S.A. 59:8-8 is really a misnomer' and, 'is more properly denominated as a notice of injury or loss.'" Lebron quoting Beauchamp v. Amedio, 164 N.J. 111, 121 (2000) (emphasis added). As unequivocally demonstrated by Exhibit A, Plaintiff filed a notice of injury two days after the injury.

"Employer's First Report of Accidental Injury or Occupational" demonstrates that, Plaintiff provided Defendants with all of the statutorily-mandated information: his name and address N.J.S.A. 59:8-4a and b; the date, place and other

circumstances of the occurrence N.J.S.A. 59:8-4c; a general description of the injury so far as it was known at the time N.J.S.A. 59:8-4d; the name of the agency causing the injury N.J.S.A. 59:8-4e. The only information that was not provided by Plaintiff to the State was the estimated amount of his damages; however, the statute only mandates that said amount only need be presented "insofar as it may be known at the time of the presentation of the claim". N.J.S.A. 59:8-4f. As only two days elapsed since the occurrence, an estimation of his damages amount was impossible at the time of the presentation of his claim. As the Court is aware, an accurate estimation of damages in the notice period is generally impossible. Accordingly, Plaintiff perfected his notice of claim on April 24, 2019, two days after the occurrence.

As the above document evidences, Officer Morales, upon his release from the hospital, after the incident, returned back to Northern State Prison. Upon his arrival at the prison, he was presented with the Supervisor's Accident Investigation Report (*See* Heintjes Cert., Exhibit C) and completed the Notice of Injury Form and accompanying documents and instructed to review same for accuracy, and, sign and date same. On that same date, April 24, 2019, a mere two days after the accident, the Notice of Injury was stamped received by the State. To put it another way, the State already had notice of the injury and conducted their own

investigation into the circumstances surrounding the assault. Plaintiff's supervisor conducted the investigation and even went so far as to fill out the remainder of requisite paperwork for Plaintiff. The paperwork was then sent to the State of New Jersey Department of the Treasury, Division of Risk Management, PO Box 620, Trenton NJ 08625 – **the exact same office and location that the State directs notices of claims be filed with**. (*see* https://www.nj.gov/treasury/riskmgt/pdf/ClaimShortForm.pdf, *see also* Heintjes Cert. at Exhibit A)

**B.   Substantial Compliance.**

The doctrine of substantial compliance requires that Plaintiff's claims against the public entities and employees survive. In Galik v. Clara Mass Medical Center, 167 N.J. 341 (2001), the New Jersey Supreme Court observed that "[t]he equitable doctrine of substantial compliance has deep roots in English common law and has received repeated recognition in our own cases." Id. at 351, 352 (internal citations omitted). "Its purpose is to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose." Id. *citing* Anske v. Borough of Palisades Park, 139 N.J. Super. 342, 347 (App. Div. 1976) It is a doctrine based on justice and fairness, designed to avoid technical rejection of legitimate

18

claims.  Id. *citing* Zamel v. Port of N.Y. Auth., 56 N.J. 1, 7 (1970).[1]

On July 19, 2021, the New Jersey Supreme Court in the matter of H.C. Equities, LP v. County of Union, New Jersey, and Union County Improvement Authority, 2021 WL 3027207 (2021) again considered the doctrine of substantial compliance in a Tort Claims Act notice case.  Relying on Galik, *supra*.  The Supreme Court reaffirmed the doctrine and stated that a court deciding a substantial compliance claim considers the following factors:

1. the lack of prejudice to the defending party;
2. a series of steps taken to comply with the statute involved;
3. a general compliance with the purpose of the statute;
4. a reasonable notice of petitioner's claim, and
5. a reasonable explanation why there was not a strict compliance with the statute.

[Galik v. Clara Mass Med. Ctr., 167 N.J. 341, 353 (2001) (*quoting* Bernstein v. Bd. Of Trs., TPAF, 151 N.J. Super. 71, 76–77 (App. Div. 1977))].

Considering these factors in the case at bar, the doctrine of substantial compliance mandates that Plaintiff's claims survive. As discussed further herein., Plaintiff provided the State with reasonable written notice, signed by him, two days after the

---

[1] In Zamel, *supra,* the New Jersey Supreme Court "resorted to the doctrine of substantial compliance to excuse the failure of the plaintiff to file a timely notice of claim with a public agency where that agency had in hand, within the 60-day period provided by statute, substantially all of the information that would have been provided in the notice."  56 N.J. at 7.

occurrence of his injury, that satisfied the mandates of the Tort
Claims Act notice provision.   Even if the Plaintiff's notice was
somehow defective, which it was not, the doctrine of substantial
compliance mandates that his claim survives, as 1.) The State
suffered no prejudice; 2.) Plaintiff filed written notice of his
claim that contained all of the information required by the
Statute; 3.) Plaintiff's written notice complied with both the
letter and intention of the Statute; 4.) Plaintiff's written notice
provided the State with reasonable notice of his claims; and 5.)
Plaintiff's notice complied with the Statute and Plaintiff
believed he satisfied all reporting requirements as it related to
the inury.

The Courts have invoked the equitable doctrine of substantial
compliance to prevent barring legitimate claims due to technical
defects. Henderson v. Herman, 373 N.J. Super. 625, 637 (App. Div.
2004), see also County of Hudson v. Dep't of Corr., 208 N.J. 1, 21
(2011) quoting Lebron, supra, at 215 "To put it another way,
substantial compliance means that the notice has been given in a
way, which though technically defective, substantially satisfies
the purposes for which notices of claims are required." Lebron,
supra, 407 N.J. Super. at 216; Lameiro v. W. N.Y. Bd. Of Educ.,
136 N.J. Super. 585, 588 (Law Div. 1975). As demonstrated above,
Plaintiff filed an entirely appropriate and compliant notice with

the spirit of the Act that provided the information required pursuant thereto.

The contents of a notice of claim as required by the Act at N.J.S.A. 59:8-4 is "designed to provide the public entity with sufficient information to enable it promptly to evaluate its liability and potential exposure and, if it chooses, to correct a defective condition and also to engage in settlement negotiations prior to the commencement of suit." Henderson, *supra*, 373 N.J. Super. at 634.

N.J.S.A. 59:8-4 Content of claim; states:

> A claim shall be presented by the claimant or by a person acting on his behalf and shall include:
>
> a. The name and post office address of the claimant;
> b. The post-office address to which the person presenting the claim desires notices to be sent;
> c. The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;
> d. A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;
> e. The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and
> f. The amount claimed as of the date of the presentation of claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the presentation of the claim, together with the basis of computation of the amount claimed.

Plaintiff's Notice of Injury report unequivocally responded to the items listed in N.J.S.A. 59:8-4.   Plain and simple, an

"inmate opened his cell door and assaulted me." (Heintjes Cert. Exhibit A)  Plaintiff then described his injury as "lower back pain, lost feeling to right leg, numbness, head injury with headache."  Id.  The information conveyed by Plaintiff was sufficient to notify the State of its potential liability and inform them "of any prospective injury, damage, or loss, insofar as it may have been known at the presentation of the claim."  If the State wanted more information, they had the right to investigate further and ask further questions of Plaintiff. In fact, defendants conducted their own investigation and were apprised and fully aware of the circumstances of the occurrence. (*See* "Supervisor's Accident Investigation Report" annexed to Heintjes Cert. as Exhibit C) If they wanted more information, Defendants had every ability to investigate further.  Their failure to investigate this matter further is of no fault of Plaintiff and in no way invalidates his notice of claim.

### POINT IV

**COUNTS TEN THROUGH THIRTEEN AND SIXTEEN THROUGH EIGHTEEN SHOULD NOT BE DISMISSED AGAINST THE PUBLIC ENTITY DEFENDANTS AS IMMUNITY DOES NOT EXIST FOR WILLFUL OR INTENTIONAL CONDUCT.**

Defendants, in their Motion to Dismiss, without citing a single case as authority, requests that the Court, prior to any discovery taking place, dismiss these counts in their entirety against the Public Entity defendants only.

Defendants argue incorrectly, that, because the torts contained in those counts contain an element of intent, the State Entity Defendants enjoy blanket immunity. Those Counts are: Intentional Infliction of Emotion Distress, Count 10; False Complaint of Unprofessional Conduct, Count 11; Intentional Interference with Prospective Economic Advantage, Count 12; Tortious Interference with Prospective Economic Advantage, Count 13; Fundamentally Unfair Government Action, Count 16; Public Employee Wrongfully Enforcing the Law, Count 17; and Wrongful Discharge in Violation of Public Policy.

Discovery is needed to ascertain if the bad actors were acting pursuant to orders or outside the scope of their employment. Again, Defendants conflate a lack of evidence, pre-discovery lack of evidence at that, as a failure to adequately state a claim upon which relief can be granted.

Critical to the analysis of whether the immunity, conferred by N.J.S.A. 59:9-2(c), applies to the State Entity Defendants in this case, is whether the conduct of the Individual State defendants was willful misconduct, or rather, conduct committed with a lack of good faith, questions that cannot be answered pre-discovery. "[W]illful misconduct is not the same thing as a lack of good faith." Margolis and Novack, Claims Against Public Entities, pg. 73 (2020) "An employee may be innocent of the former and yet guilty of the latter." Id. See also Bombace v. City of

Newark, 241 N.J. Super. 1, 9 (App. Div. 1990), reversed on other grounds, 125 N.J. 361 (1991) and Marley v. Palmyra Bor., 193 N.J. Super. 271, 283-285 (Law Div. 1983) "The immunity for [59:2-10] applies only where willful misconduct has been found and it is up to the jury to find it, distinguishing, where necessary, such misconduct from action taken with a lack of good faith." Id. See also Bombace, supra, and Marley v Palmyra, 193 N.J. Super. at 297-299. Accordingly, Defendants arguments fail at this stage of the litigation.

Furthermore, what Defendants fail to acknowledge in their argument, which is unsupported by any authority, is that N.J.S.A. 59:2-10 "does not prevent the allocation of fault to a public entity where evidence shows that the entity is directly liable for the negligent supervision of an employee who has engaged in willful misconduct. This section only precludes vicarious liability for that employee's conduct." Margolis and Novack, Claims Against Public Entities, pg. 71 (2020). See also Frugis v. Bracigliano, 177 N.J. 250, 279-281 (2003).

As such, these claims warrant fact discovery taking place to ascertain the facts and circumstances surrounding the discriminatory and tortious conduct directed at the Plaintiff. Again, it would be unreasonable to expect public records to exist that expose the tortious conduct and ratification of same by various state actors. Fact discovery is required to investigate,

examine, and explore the conduct of state actors as it relates to the allegations contained in Plaintiff's Complaint.

### POINT V

**PUNITIVE DAMAGES ARE ALLOWED AGAINST PUBLIC ENTITIES IN EMPLOYMENT CASES.**

It is well settled that the State, as an employer, is subject to punitive damages under the Conscientious Employee Protection Act (CEPA). *See* Abbamount v. Piscataway Bd. of Educ., 138 N.J. 405, 426-433 (1994) *accord*, Green v Jersey City Bd. of Educ., 177 N.J. 434, 444-446 (2003)  Liability for such damages in a CEPA case is to be determined by the jury, as trier of fact, in accordance with the principles established in the private-employment, sex discrimination case of Lehman v. Toys 'R' Us, Inc., 132 N.J. 587 (1993). *See* Abbamount, *supra,* at 429, 432, 433.

It is equally well settled that punitive damages claims are permissible against the State in actions brought pursuant to the Law Against Discrimination (LAD). *See* Cavouti v. New Jersey Transit Corp., 161 N.J. 107, 132-134 (1999) *accord* Lockley v. Dept. of Corrections, 177 N.J. 413, 423-426 (2003). The Court in Lockley went further, and, at 429-433, held that the standards for calculating damages contained in the Punitive Damages Act, N.J.S.A. 2A:15-5.9 et seq. apply to public entities, with the single exception of consideration of the financial condition of

the entity.   *See* Margolis and Novack, <u>Claims Against Public</u>
<u>Entities</u>, 2020, pg. 276.

### POINT VI

### PAIN AND SUFFERING CLAIMS ARE RECOVERABLE FOR CLAIMS IN PLAINTIFF'S COMPLAINT.

<u>N.J.S.A.</u> 59:9-2(d) is not a blanket prohibition against
damages of pain and suffering.  This section allows recovery for
pain and suffering attendant to "permanent loss of a bodily
function, permanent disfigurement or dismemberment where the
medical treatment expenses are in excess of $3,600.00."  Plaintiff
alleges in every count "permanent disabilities that will, in the
future, similarly incapacitate him, cause him great pain and
suffering and require medical treatment and other damages."  The
Plaintiff's damages are permanent and severe as he was required to
have a fusion surgery and his mental health condition as a result
of facts underlying the claim were so severe they required
commitment to a mental health facility.  Given that these factual
allegations must be taken as true for purposes of the instant
motion, Defendants' argument fails, and Plaintiff is entitled to
submit evidence to prove his permanent injuries.

<u>**CONCLUSION**</u>

For the reasons argued herein, it is respectfully requested that Defendants' Motion to Dismiss pursuant to Federal Rule 12(b)(6) is denied.

                              Respectfully submitted:
                              WEINER LAW GROUP LLP
                              Attorneys for Plaintiff,
                              Ruben D. Morales

                        By:   s/*David J. Heintjes*
                              David J. Heintjes, Esq.
                              Member of the Firm

Dated: August 18, 2021

2096985_1

27