**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| RUBEN D. MORALES,<br><br>      Plaintiff,<br><br>     v.<br><br>STATE OF NEW JERSEY, THE NEW JERSEY DEPARTMENT OF CORRECTIONS, NORTHERN STATE PRISON, THE NEW JERSEY DEPARTMENT OF CORRECTIONS SPECIAL INVESTIGATION DIVISION, MARCUS HICKS, VICTORIA KUHN, PATRICK NOGAN, GEORGE ROBINSON, JR., MATTHEW SCHLUSSELFELD, DUANE GRADE (in their personal and official capacities), SHAWN ZAMBRANO, JOHN AND JANE DOES (1-50) (in their personal and professional capacities), and XYZ ENTITIES AND CORPS (1-50),<br><br>      Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **Civil Action No. 21-11548 (JXN) (AME)**<br><br><br>**MEMORANDUM OPINION**<br>**AND ORDER** |

**NEALS**, District Judge:

     **THIS MATTER** comes before the Court on Defendants the State of New Jersey, the New Jersey Department of Corrections ("the DOC"), Northern State Prison ("Northern State"), the New Jersey Department of Corrections' Special Investigation Division (the "Special Investigation Division"), Marcus Hicks, Victoria Kuhn, Jr., Matthew Schlusselfeld, and Duane Grade's (collectively, "the State Defendants'")[1] motion to dismiss Plaintiff Ruben D. Morales's ("Plaintiff's") complaint (ECF No. 1-1) (the "Complaint") pursuant to Federal Rule of Civil

---

[1] The State Defendants do not include Patrick Nogan, George Robinson, Jr., and Shawn Zambrano (the "Non-Moving Defendants").

Procedure 12(b)(6) (ECF No. 7) (the "Motion").  Plaintiff opposes the Motion (ECF No. 13) (the "Opposition"), and the State Defendants Replied (ECF No. 15).  The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

1.      As an initial matter, the Court takes note of Plaintiff's suggestion that the Motion is premature because fact discovery has not yet taken place (*see* Opp., at 14-15[2]), but this does not preclude a review of the merits of the Motion.  *See Thomas v. Ford Motor Co.*, 70 F.Supp.2d 521, 524 (D.N.J.) (Dismissal is warranted "where, under any set of facts . . . the plaintiff is not entitled to relief.") (citations omitted).

2.      On April 22, 2021, Plaintiff initiated this action in the Superior Court of New Jersey, Civil Division, Essex County, under caption *Ruben D. Morales v. State of New Jersey, et al.*, ESX-L-003226-21, alleging eighteen causes of action related to Plaintiff's employment with the DOC.  *See, gen.,* Compl.  On May 19, 2021, the State Defendants removed this action to this District pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1441(a), (c), and 28 U.S.C. § 1443 on the grounds that the "United States District Court has original jurisdiction over this matter[.]"  State Defs.' Notice of Removal (ECF No. 1), at 3 ¶¶ 5-6.  On July 8, 2021, the State Defendants filed the Motion.

3.      This action appears to arise out of Plaintiff's employment as a "Senior Correctional Police Officer" at the DOC and an alleged injury he sustained while employed.  Compl. ¶ 1.  The following allegations are from Plaintiff's Complaint.  On April 22, 2019, Plaintiff was "assigned to the Administrative Segregation Unit of" Northern State (the "Segregation Unit").  Compl. ¶ 16.

---

[2] The Court refers to the ECF page numbers at the top of the documents discussed herein.

The Segregation Unit's "locks on the cell doors . . . did not work and did not lock[.]" *Id.* ¶ 19. The DOC "had direct and actual knowledge from Plaintiff . . . that the locks on the cell doors" in the Segregation Unit "were defective, faulty, and or inoperable prior to April 22, 2019[,] and took no steps to repair the locks on the cell doors[.]" *Id.* ¶ 20. Additionally, that the DOC "was aware [that] the prisoners incarcerated in" the Segregation Unit "had knowledge that the safety locks on the cell doors did not lock." *Id.* ¶ 24.

4.     On April 22, 2019, Plaintiff was injured by defendant Shawn Zambrano ("Zambrano") when Zambrano "let himself out of his cell and proceeded to viciously attack and beat" Plaintiff "after following [him] out of the unlocked door of his cell." *Id.* ¶ 32. On April 22, 2019, Plaintiff allegedly "reported to Defendants . . . that he was" assaulted and severely injured by Zambrano. *Id.* ¶ 33. Plaintiff alleges that his injury was "a result of the lack of properly working and locking safety and cell doors[,]" which "caused [him] to suffer severe, painful bodily injuries . . . causing [Plaintiff] great pain and suffering," that "left him with permanent reputational damage, loss of income and permanent disabilities[.]" *Id.* ¶ 26.

5.     On May 14, 2019, Plaintiff "filed a workers' compensation Claim Petition." *Id.* ¶ 36. "[S]hortly after the assault[,] . . . Defendants began an unlawful investigation into Plaintiff[.]" *Id.* ¶ 37. "Defendants then used information from their malicious investigation to portray Plaintiff in a false light as a criminal." *Id.* ¶ 39. "Defendants' false portrayal of Plaintiff lead to him being both administratively and criminally prosecuted for offenses he did not commit[,]" and his "inability to return to his position at DOC" and "reputational damage[.]" *Id.* ¶¶ 40-42. Also, "[w]hile on Workers' Compensation [leave], . . . criminal and administrative charges were instituted against Plaintiff[,] which . . . prevented his ability to return to work[.]" *Id.* ¶ 45.

6.      On April 22, 2021, Plaintiff filed the Complaint against the State Defendants and Non-Moving Defendants with the following claims: Law Against Discrimination ("LAD") - Failure to Accommodate (Count One); LAD - Retaliation (Count Two); LAD Aiding and Abetting (Count Three);[3] the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et. seq. (the "Civil Rights Act") (Count Four); Retaliation - Constitutional Violation under 42 U.S.C. § 1983 (Count Five); New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq*. ("CEPA") (Count Six); Giving Dangerous Person Opportunity to Injure (Count Seven); Enhancing Risk of Criminal Attack (Count Eight); Discharge Due to Workers' Compensation Claim ("Workers' Comp.") (Count Nine); Intentional Infliction of Emotional Distress (Count Ten); False Complaint of Unprofessional Conduct (Count Eleven); Intentional Interference with Prospective Economic Advantage (Count Twelve); Tortious Interference with Prospective Economic Advantage (Count Thirteen); Assault (Count Fourteen); Battery (Count Fifteen); Fundamentally Unfair Government Action (Count Sixteen); Public Employee Wrongfully Enforcing Law (Count Seventeen); and Wrongful Discharge in Violation of Public Policy - Pierce Claim (Count Eighteen).

7.      Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted).  A complaint will survive a motion to dismiss if it provides a sufficient

---

[3] The State Defendants did not move to dismiss Counts One to Three.

factual basis to state a facially plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

8.      To determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief.  *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

A.      **The Deprivation of Rights and Civil Rights Claims - Counts Four and Five**

9.      Plaintiff's allegations are brought under § 1983 (Count Five) and the Civil Rights Act (Count Four).  Compl. ¶¶ 61-71.  The State Defendants argue that Counts Four and Five should be dismissed as the statutes do not provide causes of action against the State Defendants because the DOC, Northern State, and the Special Investigation Division are not "persons[,]" and the individual State Defendants cannot be sued in their official capacity.  State Defs.' Letter Br. (ECF No. 7-2) (the "Letter Brief"), at 7-10.  The Court agrees.

10.     § 1983 and Civil Rights Act claims are analyzed similarly.  *Duardo v. City of Hackensack*, No. 22-6779, slip op., 2023 WL 4418606, at *5 (D.N.J. July 10, 2023) (citation omitted).  The Court, therefore, will consider both claims under the same analysis.  To state a § 1983 claim, a "plaintiff [must] prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citation omitted).

11.     "To be liable under Section 1983[,]" a "defendant must be a 'person' within the meaning of the statute." *Reddick v. Hicks*, No. 22-6926, slip op., 2023 WL 4579884, at *3 (D.N.J. July 18, 2023) (citation omitted).  This is also true of claims under the Civil Rights Act.  *See, id.*, 2023 WL 4579884, at *3 (The Civil Rights Act "premises liability on the conduct of a person.") (citations and internal quotations and brackets omitted).  A "person" does not include the DOC, Northern State, and the Special Investigation Division except "when used to designate the owner of property which may be the subject of an offense."  N.J.S.A. 1:1-2.

12.     State officials are also not persons under § 1983 and the Civil Rights Act.  *See Reddick*, 2023 WL 4579884, at *3 ("It is well established that neither a State nor its officials acting in their official capacities are persons under § 1983.") (citation and internal quotations omitted). Indeed, such a reading "is reinforced by Congress' purpose in enacting the statute." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66 (1989).  This is because "suit[s] against a state official in his or her official capacity [are] not a suit against the official but rather is a suit against the official's office . . . [a]s such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (citations omitted).  Thus, claims against the DOC, Northern State, the Special Investigation Division, and the individual State Defendants sued in their official capacity under § 1983 or the Civil Rights Act are dismissed with prejudice because they "are not persons within the meaning of" the statutes. *Reddick*, 2023 WL 4579884, at *3 (internal quotations omitted)*; see also Didiano v. Balicki*, 488 Fed.Appx. 634, 638 (3d Cir. 2012).

13.     Here, the DOC, Northern State, the Special Investigation Division, and the individual State Defendants are not "person[s][.]"  Indeed, Plaintiff does not dispute that the State Defendants are not "person[s][.]" Opp., at 16.  Instead, Plaintiff alleges that the individual defendants maintained a policy or permitted an "unlawful custom" to take place that violated

Plaintiff's rights.  *Id.*, *see also* Compl. ¶¶ 61-64.  Such an argument, however, supports claims against municipalities and not State entities and state officials, like here.  *See Lockhart v. Willingboro High School*, 170 F.Supp.3d 722, 730 (D.N.J. 2015) (Providing criteria for liability against municipalities "through one of its policymakers promulgat[ing] an unconstitutional policy, or acquiesce[ing] in a widespread custom that caused the constitutional violation") (citations omitted).

14.     To sustain a § 1983 or the Civil Rights Act claim, a plaintiff must also allege that the defendant was personally involved in the misconduct.  *See Duardo*, 2023 WL 4418606, at *5 ("[A]n individual defendant is liable for constitutional violations only if he had 'personal involvement' in the alleged violations.") (citation omitted).  To "sufficiently allege a defendant's personal involvement, a plaintiff must describe the defendant's participation in or actual knowledge of an acquiescence in the wrongful conduct[.]" *Id.* at *5 (citation and internal quotations and brackets omitted).  Here, the Complaint does not allege that any individual State Defendants "participated in[,]" had "actual knowledge of[,]" or "acquies[ed] in the wrongful conduct."  *See* Compl. ¶¶ 66-71.

15.     To be sure, as to Counts Four and Five, the Complaint appears to be a "shotgun pleading" as it fails to "specify[] which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Radhakrishnan v. Pugliese*, No. 20-220, slip op., 2021 WL 11593799, at *1 (D.N.J. May 21, 2021) (citations omitted).  Shotgun pleadings or "vague group pleadings" are impermissible under *Rule* 8.  *Karupaiyan v. Atlantic Realty Development Co., Inc.*, No. 18-12532, 2020 WL 13728036, at *2 (D.N.J. Jan. 17, 2020) (citations omitted); *see also Radhakrishnan*, 2021 WL 11593799, at *1 (same).  Third Circuit courts generally dismiss such pleadings as "insufficiently vague and an impermissible

shotgun pleading." *Nash v. New Jersey*, No. 22-1804, 2022 WL 4111169, at *3 (D.N.J. Sept. 8, 2022).

16.     Because the State Defendants are not "persons" within the meaning of § 1983 or the Civil Rights Act, Plaintiff failed to state a plausible claim under either statute.  The Complaint also does not allege that the individual State Defendants were personally involved in the alleged misconduct.  Finally, the allegations related to Counts Four and Five are vague under Federal Rule of Civil Procedure 8.  The Motion, therefore, is granted as to Counts Four and Five, which are accordingly dismissed with prejudice.

### B.     The CEPA and Workers' Comp. Claims - Counts Six and Nine

17.     The State Defendants argue that the allegations in the Complaint "are too vague to establish that [Plaintiff] engaged in a whistleblowing act, that he suffered an adverse job action, or that there was a causal connection between the adverse job action and the whistleblowing."  Letter Br. at 20.  The Court disagrees.

18.     CEPA provides in relevant part that "[a]n employer shall not take any retaliatory action against an employee because the employee . . . [d]iscloses . . . to a supervisor or to a public body any activity, policy or practice of the employer, . . . that the employee reasonably believes . . . is in violation of a law . . . or . . . is fraudulent or criminal[.]"  N.J.S.A. 34:19-3(a.)(1)-(2).  To establish a *prima facie* case under CEPA, a plaintiff "must show: (1) a reasonable belief that her employer's conduct violated a law . . .; (2) a whistle-blowing activity; (3) an adverse employment action; and (4) a causal connection between her whistle-blowing activity and the adverse employment action."  *Smith v. Township Of East Greenwich*, 519 F.Supp.2d 493, 510 (D.N.J. 2007) (citations omitted).  "Once the plaintiff meets his prima facie burden, the burden of

production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions." *Id.* at 510 (citation omitted).

19.     The Complaint alleges that Plaintiff: (i) "complained about unsafe conditions in the jail specifically, the conditions which lead to and ultimately caused his injuries[;]" which (ii) "[a]s a result of this protected whistleblowing" activity, Plaintiff "was retaliated against by the initiation of malicious criminal and administrative processes[;]" and (iii) that in "engaging in such protected activity, Plaintiff was subjected to ongoing retaliation in the form of adverse employment actions including . . . inability to return to his position, criminal and administrative prosecution or continued threats of same[;]" and (iv) that "[t]his ongoing retaliatory conduct by Defendants constitutes a violation of CEPA."  Compl. at ¶¶ 73-75.  Such allegations are sufficient to state a CEPA claim.

20.     State Defendants alternatively argue that even if Plaintiff establishes a *prima facie* case of a CEPA violation, the claim fails because "[i]t goes without saying that probable cause to believe that a law enforcement officer such as Plaintiff has committed a crime is a legitimate reason to take adverse actions against him, up to and including termination."  Letter Br. at 26.  The Court agrees that State Defendants' "reliance upon possible defenses to Plaintiff's claim are irrelevant at this stage of the litigation."  Opp., at 19.  Thus, the Motion is denied as to Count Six.

21.     Without argument and/or authority, the State Defendants contend by point heading alone that Plaintiff's Workers' Comp. claim should be dismissed for the same reasons as the CEPA claim.  Letter Br. at 26.  The Court disagrees.

22.     To establish "a *prima facie* case for retaliatory discharge, the employee must prove that: (1) he or she attempted to make a claim for workers' compensation benefits; and (2) he was

discharged for making that claim[.]" *Morris v. Siemens Components, Inc.*, 928 F.Supp. 486, 493 (D.N.J. 1996) (citation omitted).

23.     The Complaint alleges that on May 14, 2019, Plaintiff "filed a workers' compensation Claim Petition.  Compl. ¶ 36.  The Complaint further alleges that Plaintiff was "removed . . . from employment and discriminated against . . .  because he claimed workers' compensation benefits from DOC."  *Id.* ¶ 86.  Additionally, that "malicious criminal and administrative prosecutions" were caused "against Plaintiff" to "retaliate against [him] for filing a claim for workers' compensation benefits."  *Id.* at ¶ 87.

24.     In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  *Phillips*, 515 F.3d at 231.  Such allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Moreover, "in weighing a motion to dismiss," courts consider "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim."  *Perry v. OCNAC #1 Fed. C.U.*, 423 F.Supp.3d 67, 74 (D.N.J. 2019) (citations omitted).

25.     Here, in accepting Plaintiff's allegations as true, the Court finds that the Complaint sufficiently pleads that Plaintiff suffered an adverse employment action due to his informing and/or complaining about unsafe conditions in the jail and, particularly, the faulty locks in the Segregation Unit, and that such adverse employment action was the result of Plaintiff filing a Workers' Comp. claim.  And that Plaintiff may have been "subjected to" additional adverse employment actions due to his complaint(s) and/or report(s) concerning the Segregation Unit's cell door locks.  In so pleading, Plaintiff, "at this early stage of the proceedings," has "raise[d] a reasonable expectation that discovery will reveal evidence of a" CEPA violation and retaliatory discharge. *McDermott v.*

10

*Clondalkin Grp., Inc.*, 649 F. App'x 263, 267 (3d Cir. 2016) (citation and quotation omitted).  The Motion, therefore, is denied as to Counts Six and Nine.

      C.      **The State Tort Claims - Counts Seven to Eight, Ten to Thirteen, and Sixteen to Eighteen**

26.      The State Defendants assert that Counts Seven to Eight, Ten to Thirteen, and Sixteen to Eighteen ("the State Tort Claims") were "brought against all of the Defendants under the Tort Claims Act," N.J.S.A. 59:1-1, et seq. (the "Tort Claims Act"), and that the State Tort Claims "are barred" because "Plaintiff did not file a notice of claim[,]" within 90 days of the cause of action.  Letter Br., at 3, 15.  The Court agrees that the State Tort Claims are barred for noncompliance with the Tort Claims Act.

27.      Here, the Complaint does not allege that Plaintiff filed the notice of claim within 90 days of the accrual of his cause of action, such date "generally [being] the date on which the alleged tort is committed."  *Lassoff v. New Jersey*, 414 F.Supp.2d 483, 490, n.17 (D.N.J. 2006) (citations omitted).  Indeed, Plaintiff does not dispute that he did not file a Tort Claim Notice, and instead argues that "within seventy-two (72) hours of the" alleged assault by Zambrano, Plaintiff completed an "Employer's First Report of Accidental Injury or Occupational[,] form, Ex. A to the August 18, 2021, Certification of David J. Heintjes, Esq. (the "Heintjes Cert.") (ECF No. 13-1) (the "Accident Injury Form"), and that the document "is nearly identical to a Tort Claim Notice[.]" Opp., at 7-8.  Plaintiff also attached a copy of the April 24, 2019, Supervisor's Accident Investigation Report (*see* Ex. C to Heintjes Cert. (ECF No. 13-1) (the "Supervisor's Report")), which provides information similar to the Accident Injury Form (together "the Injury Documents").

28.      The Tort Claims Act "sets forth a procedural framework for making claims against public entities and public employees."  *Geissler v. City of Atlantic City*, 198 F.Supp.3d 389, 400

(D.N.J. 2016) (citing N.J.S.A. 59:8-3).  In failing to file a notice of tort claim, the plaintiff is "forever barred from recovering against a public entity or public employee if . . . [t]he claimant failed to file the claim with the public entity within 90 days of the claim[.]"  N.J.S.A. 59:8-8(a.); *see also  White v. City of Vineland*, 500 F.Supp.3d 295, 309 (D.N.J. 2020) (Failure to "comply with the notice requirement" means that the plaintiff "cannot pursue [the] tort claims[.]").  "The notice provision" of the Tort Claims Act "applies to both intentional and non-intentional torts[.]" *Lassoff*, 414 F.Supp.2d at 490 (citations omitted).  The lack of tort claim notice triggers dismissal with prejudice.  *See Geissler*, 198 F.Supp.3d at 402, *see also Lassoff*, 414 F.Supp.2d at 489-490.

29.     The Injury Documents appear to be the standard forms completed after an accident whether litigation ensues or not.  Permitting the Injury Documents to serve as notice of a tort claim here does not "achieve[]" any of the public policy goals of N.J.S.A. 59:8-8 because it does not afford "the public entity time to review the claim and to promptly investigate the facts and prepare a defense[,]" does not provide the public entity and/or employee "an opportunity to settle meritorious claims before bringing suit[,]" does not "grant[] them an opportunity to correct the conditions which gave rise to the claim," and does not "allow[] them to inform the State in advance as to the expected liability." *Ewing v. Cumberland County*, 152 F.Supp.3d 269, 296 (D.N.J. 2015) (citations omitted).  In the Opposition, Plaintiff counters that "[t]he information conveyed . . . was sufficient to notify the State of its potential liability[,]" and that if the State Defendants "wanted more information," they "had every ability to investigate further[.]"  Opp., at 28.

30.     A notice of tort claim "must include: . . . the name and post office address of the claimant;" the mailing address for "notices to be sent; . . . the name or names of the public entity, employee or employees causing the injury," and "[t]he amount claimed as of the date of presentation of the claim[.]"  N.J.S.A. 59:8-4(a.)-(b.), (e.)-(f.).  The notice must also state "the

date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and "provide a general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." *Panarello v. City of Vineland*, 160 F.Supp.3d 734, 745 (D.N.J. 2016) (citations and internal brackets omitted).  It is clear from the face of the Injury Documents that neither document provides the required information.

31.     Plaintiff next argues that "[t]he doctrine of substantial compliance requires that Plaintiff's claims against the public entities and employees survive."  Opp., at 24.  A court "deciding a substantial compliance claim" must consider the following factors: (i) "the lack of prejudice to the defending party;" (ii) "a series of steps taken to comply with the statute involved;" (iii) "a general compliance with the purpose of the statute;" (iv) "a reasonable notice of petitioner's claim[;]" and (v) "a reasonable explanation why there was not a strict compliance with the statute." *H.C. Equities, LP v. County of Union*, 247 N.J. 366, 386 (2021) (citations omitted).

32.     The Court finds that the doctrine of substantial compliance does not apply here. Rather than, for example, Plaintiff's counsel submitting a letter to the State Defendants to inform them of the allegations raised in the Complaint, and requesting that the State Defendants "preserve surveillance tapes[,]" and the alleging that Plaintiff and the State Defendants communicated in regards to this matter between the alleged assault and this litigation, the Injury Documents provide basic information related to Plaintiff's alleged injury, which is insufficient to put the State Defendants on notice "of an incident for which they could be liable and [did not] g[i]ve enough detail for them to begin investigations and to find the correctional officers who were involved." *Ewing*, 152 F.Supp.3d at 296-98.  While Plaintiff alleges that "[t]he only information that was not provided by Plaintiff" in the Injury Documents "was the estimated amount of his damages" (*see* Opp., at 23), the Injury Documents do not identify the "names of the public entity, employee or

employees causing the injury" as required under N.J.S.A. 59:8-4(e).  The Injury Documents also do not "specify the amount claimed" or "provide notice that" Plaintiff "intended to seek money damages[,]" and Plaintiff, relatedly, "also never sought permission for leave to file a late notice of claim[.]" *Martin v. U.S. Marshals*, 965 F.Supp.2d 502, 549 (D.N.J. 2013).

33.     The face of the Accident Injury Form provides that the document "is designed to collect pertinent data to be used should an employee report a work-related injury or illness[,]" and does not state that this information serves as a notice of tort claim and/or provides the State Defendants with adequate notice of pending litigation.  *See* Accident Injury Form, at p. 1.  The Accident Injury Form also does not inform Plaintiff's supervisors and/or employer that this document will be used in a future litigation or will support claims against the State Defendants. *See, gen.,* the Accident Injury Form.  The Supervisor's Report similarly does not provide the required notice of tort claim.  *See, gen.*, the Supervisor's Report.  Thus, the State Defendants will be prejudiced if the Injury Documents are allowed to substitute the required the notice of tort claim because in completing these documents, Plaintiff did not: (i) give the State Defendants time to prepare for the pending litigation; (ii) allow the State Defendants to communicate with Plaintiff regarding his allegations; (iii) provide for the preservation of likely discoverable information; and (iv) allow the State Defendants to attempt to resolve this matter without the need for motion practice.

34.     Additionally, Plaintiff has not demonstrated that his counsel acted "unreasonably or delayed in providing [the required] information." *Ewing*, 152 F.Supp.3d at 298.  Plaintiff also did not make an application with the Court for leave to file a "late notice of claim" demonstrating "sufficient reasons constituting extraordinary circumstances for his failure to file a notice of claim

within the" required time.  N.J.S.A. 59:8-9.  Or, alternatively, "file a motion seeking leave to file a late notice of claim within a reasonable time thereafter[.]" *Ibid.*

35.     Accordingly, the Court finds that the doctrine of substantial compliance does not apply because Plaintiff has not complied with the notice requirement, "failed to show that" he "took any steps to comply with the statute or that" he "generally complied with the purpose of the statute, and has not provided a reasonable explanation why there was not strict compliance." *May v. Borough of Pine Hill*, 755 F.Supp.2d 623, 630 (D.N.J. 2010).  Further, Plaintiff's argument that his claim should survive because the claim accrued on April 24, 2019, has no merit "because Plaintiff[] never filed a notice of the claim as required[.]"  Martin, 965 F.Supp.2d at 549.

36.     And while the lack of notice of tort claim is sufficient to dismiss the State Tort Claims, the result would be the same as to the DOC, Northern State, and the Special Investigation Division because these entities are "immune" from the "intentional and willful wrongdoing of their employees[,]" *see* N.J.S.A. 59:2-10 (State entities are not "liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful conduct)"; N.J.S.A. 59-2(c) (Punitive damages may not be sought against State entities); N.J.S.A. 59:9-2(d) (Pain and suffering damages may not be sought against State entities).

37.     Accordingly, the Motion is granted as to the State Tort Claims (Counts Seven to Eight, Ten to Thirteen, and Sixteen to Eighteen) and are dismissed with prejudice.

38.     For all the foregoing reasons, it is hereby,

**ORDERED** that the State Defendants—State of New Jersey, the DOC, Northern State, the Special Investigation Division, Marcus Hicks, Victoria Kuhn, Jr., Matthew Schlusselfeld, and Duane Grade's Motion to Dismiss (ECF No. 7) the Complaint (ECF No. 1-1) is **GRANTED in part** and **DENIED in part**; it is further

**ORDERED** that the Motion to Dismiss is **GRANTED** as to Counts Four and Five and to the State Tort Claims (Counts Seven to Eight, Ten to Thirteen, and Sixteen to Eighteen) and are dismissed *with prejudice*; it is further

**ORDERED** that the Motion to Dismiss is denied as to Counts Six and Nine; it is further

**ORDERED** that this Memorandum Order neither addresses nor dismisses Counts One to Three or Counts Fourteen to Fifteen; it is further

**ORDERED** that the claims herein dismissed do not apply to the Non-Moving Defendants—Patrick Nogan, George Robinson, Jr., and Shawn Zambrano.


                                                    s/ Julien Xavier Neals
DATED: 8/3/2023                          **JULIEN XAVIER NEALS**
                                                    United States District Judge

16